**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **NOBLE ENVIRONMENTAL POWER, LLC**[1] | Case No. 16-12055 (KG) |
| Debtor. | **Ref. Docket No. 119** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE AMENDED PLAN OF REORGANIZATION OF THE DEBTOR PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtor and debtor-in-possession (the "**Debtor**") having filed its *Amended Plan of Reorganization of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code*, dated November 1, 2016 (together with the Plan Supplement, the "**Plan**")[2] [Docket No. 119], and the *Disclosure Statement for the Amended Plan of Reorganization of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code*, also dated November 1, 2016 (the "**Disclosure Statement**") [Docket No. 120]; and the Disclosure Statement and appropriate Ballots for voting on the Plan having been approved and transmitted to Holders of Class 3 Secured Lender Claims and Class 4 General Unsecured Claims pursuant to that certain *Order: (A) Approving Disclosure Statement; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan; (E) Scheduling Hearing and Establishing Notice and Procedures for Filing Objections to Confirmation of the Plan; and (F) Granting Related Relief*, entered by the Court on November 1, 2016 (the "**Disclosure**

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Noble Environmental Power, LLC (7076). The Debtor's principal offices are located at 6 Main Street, Suite 121, Centerbrook, CT 06409.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

**Statement Order**") [Docket No. 124]; and the Plan Supplement having been filed on December 2, 2016 [Docket No. 141]; and the Debtor having filed its *Debtor's Memorandum of Law in Support of Confirmation of Amended Plan of Reorganization of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code* on December 6, 2016 [Docket No. 147] (the "**Confirmation Memorandum**"); and the *Declaration of Kay McCall in Support of Confirmation of the Amended Plan of Reorganization of the Debtor Pursuant to Chapter 11 of the Bankruptcy Code* having been filed on December 6, 2016 [Docket No. 148]; and the *Declaration of Jeffrey L. Pirrung Certifying Votes on and Tabulation of Ballots Accepting or Rejecting the Plan of Reorganization of the Debtor*, submitted by American Legal Claims Services, LLC, the Debtor's Claims and Voting Agent, having been filed on December 6, 2016 [Docket No. 142] (the "**Voting Report**"); and a hearing to consider Confirmation of the Plan having been held before this Court on December 9, 2016 (the "**Confirmation Hearing**") after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtor and other parties-in-interest in accordance with the Disclosure Statement Order, title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), in each case as established by the affidavits of service, mailing, and/or publication filed with this Court prior to the Confirmation Hearing; and upon all of the proceedings held before this Court and after full consideration of: (i) any objections to the Confirmation of the Plan filed with this Court and not subsequently withdrawn, settled, or deemed moot; (ii) the Plan Supplement; (iii) the Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented at the Confirmation Hearing; (vi) the declarations and/or affidavits filed with this Court in relation to

the Confirmation Hearing; (vii) all other evidence proffered or adduced at, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and (viii) the entire record of the Chapter 11 Case; and after due deliberation thereon; and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A. *Jurisdiction; Venue; Core Proceeding*. The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and the Court may enter a Final Order consistent with Article III of the United States Constitution.

B. *Transmittal and Mailing of Solicitation Materials and Notices*. The solicitation materials and notices prescribed by the Disclosure Statement Order were served in compliance with the Disclosure Statement Order, and such service was appropriate and sufficient. Supplemental notice of the Confirmation Hearing was provided by publication as required by the Disclosure Statement Order. Appropriate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed pursuant to the Disclosure Statement Order was given in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and no other or further notice is, or shall be, required.

C. *Adequacy of Solicitation Procedures*. All procedures used to distribute the solicitation materials to the appropriate holders of Claims entitled to vote on the Plan and to tabulate the ballots returned by such holders were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

D. *Good Faith Solicitation -- 11 U.S.C. § 1125(e)*. Based on the record before the Court in the Chapter 11 Case, (i) the Debtor is deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(c) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) the Debtor and all of its respective representatives shall be deemed to have participated in good faith and in compliance with the applicable

[3] The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

provisions of the Bankruptcy Code in the solicitation of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

E. _Separate Classes of Claims and Equity Interests_. The Plan separately classifies the Claims against, and Equity Interests in, the Debtor. Holders of Class 3 Secured Lender Claims and Class 4 Unsecured Claims are Impaired under, and entitled to vote on, the Plan.

F. _Impaired Classes that have Voted to Accept or Reject the Plan_. Classes 3 and 4 are Impaired under, and entitled to vote on, the Plan. As evidenced by the Voting Report, which certified both the method and results of the voting, Classes 3 and 4 – the only Classes entitled to vote – have voted to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code. Thus, at least one Impaired Class of Claims against the Debtor has voted to accept the Plan.

G. _Classes Deemed to Accept Plan_. Classes 1, 2, and 5 are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan.

H. _Class Deemed to Reject Plan_. Class 6 Holders of Equity Interests in the Debtor are not entitled to receive or retain any property under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan.

I. _Debtor Releases, Exculpations and Injunctions_. Each of the release, exculpation and injunction provisions set forth in the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) confers material benefits on, and is in the best interests of, the Debtor, its Estate, and its creditors; and (iv) is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, and other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the release, exculpation, and injunction provisions contained in the Plan.

J. _Third Party Releases_. The Releases by holders of Claims provided for in Article IX.D.2 of the Plan are (i) in exchange for the good and valuable consideration provided by the Released Parties, representing a good faith settlement and compromise of the claims released herein; (ii) in the best interests of the Debtor and all holders of Claims and Equity Interests; (iii) fair, equitable, and reasonable; and (iv) approved after due notice and opportunity for hearing.

K. _Plan Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(1)_. The Plan complies with the applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

(i) _Proper Classification -- 11 U.S.C. §§ 1122, 1123(a)(1)_. Aside from Administrative Expense Claims, Priority Tax Claims, Fee Claims, and U.S. Trustee Fees, which need not be classified, the Plan designates six Classes of Claims against, and Equity Interests in, the Debtor. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each

such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) *Specify Unimpaired Classes -- 11 U.S.C. § 1123(a)(2)*. Articles VI.A.2(c)(i), VI.A.2(c)(ii) and VI.A.2(c)(v) of the Plan specify that Classes 1, 2, and 5 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii) *Specify Treatment of Impaired Classes -- 11 U.S.C. § 1123(a)(3)*. Articles VI.A.2(c)(iii), VI.A.2(c)(iv), and VI.A.2(c)(vi) of the Plan specify that Classes 3, 4 and 6 are Impaired, and specify the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv) *No Discrimination -- 11 U.S.C. § 1123(a)(4)*. The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v) *Implementation of Plan -- 11 U.S.C. § 1123(a)(5)*. As set forth in Article VI of the Plan, the Plan provides adequate and proper means for its implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi) *Non-Voting Equity Securities -- 11 U.S.C. § 1123(a)(6)*. None of the New Equity in Reorganized NEP to be issued under the Plan is a non-voting equity security. The Operating Agreement of Reorganized NEP includes a provision prohibiting the issuance of non-voting equity securities. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii) *Selection of Officers and Directors -- 11 U.S.C. § 1123(a)(7)*. The Debtor has properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as officers or managers of Reorganized NEP (subject to replacement or removal in accordance with the terms of the Operating Agreement of Reorganized NEP), and the manner of selection and appointment of such individuals is consistent with the interests of holders of Claims and Equity Interests and with public policy and, accordingly satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(viii) *Additional Plan Provisions -- 11 U.S.C. § 1123(b)*. The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(ix) *Compliance with Fed. R. Bankr. P. 3016*. The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). Further, the Plan and Disclosure Statement describe in specific and conspicuous language all acts to be

enjoined and identify the entities that are subject to the injunction, satisfying Bankruptcy Rule 3016(c) to the extent applicable.

(x) *Compliance with Fed. R. Bankr. P. 3017*. The Debtor has given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure Statement Order. The solicitation materials prescribed by the Disclosure Statement Order were transmitted to holders of Claims in Classes 3 and 4 entitled to vote on the Plan in accordance with Bankruptcy Rule 3017(d).

(xi) *Compliance with Fed. R. Bankr. P. 3018*. The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan was transmitted to all holders of Class 3 Secured Lender Claims and Class 4 General Unsecured Claims entitled to vote on the Plan, sufficient time was prescribed for such holders of Claims in Classes 3 and 4 to accept or reject the Plan, and the solicitation materials used and solicitation procedures followed comply with sections 1125 and 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

L. *Debtor's Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(2)*. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2).

M. *Plan Proposed in Good Faith -- 11 U.S.C. § 1129(a)(3)*. The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3). The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing. The Plan has been accepted by the requisite holders of Class 3 Secured Lender Claims and Class 4 General Unsecured Claims entitled to vote on the Plan and such acceptance evidences the informed judgment of holders of Claims in Classes 3 and 4 that the Plan is in their best interests. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estate and to effectuate a distribution of such value to the Debtor's creditors. Therefore, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

N. *Payments for Services or Costs and Expenses -- 11 U.S.C. § 1129(a)(4)*. All payments made or to be made by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O. *Directors, Officers and Insiders -- 11 U.S.C. § 1129(a)(5)*. The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons that will serve as initial managers of Reorganized NEP of the Effective Date of the Plan have been fully disclosed in the Plan Supplement. The election or appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against, and Equity Interests in, the Debtor and with public policy. The identity of any insider

that will be employed or retained by Reorganized NEP and the nature of such insider's compensation have also been fully disclosed, to the extent applicable and presently determinable.

P. *No Rate Changes -- 11 U.S.C. § 1129(a)(6)*. No governmental regulatory commission has jurisdiction over the rates of the Debtor. Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to confirmation of the Plan.

Q. *Best Interests of Creditors -- 11 U.S.C. § 1129(a)(7)*. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The information included in Article VIII.B.4 of the Plan and other evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an Impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. Thus, the "best interest of creditors" test is clearly satisfied.

R. *Acceptance or Rejection by Certain Classes -- 11 U.S.C. § 1129(a)(8)*. Classes 1, 2, and 5 are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 3 and 4 are Impaired and have voted to accept the Plan. Class 6 Equity Interests are not entitled to receive or retain any property under the Plan and, therefore, Class 6 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to those Classes of Claims and Equity Interests.

S. *Treatment of Administrative Expense and Priority Tax Claims -- 11 U.S.C. § 1129(a)(9)*. The Plan provides for treatment of Administrative Expense Claims and Priority Tax Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code. With respect to Fee Claims, the Plan provides that unpaid reasonable Fee Claims for services rendered before the Effective Date shall be paid, in full, in cash subject to the review process contemplated in Article VI.A.1(b) of the Plan.

T. *Acceptance by Impaired Class -- 11 U.S.C. § 1129(a)(10)*. As evidenced by the Voting Declaration, the Plan has been accepted by the Impaired Classes of Claims that are entitled to vote on the Plan (*i.e.*, Classes 3 and 4), determined without including any acceptance of the Plan by any "insider" (as that term is defined in section 101(31) of the Bankruptcy Code). Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class of Claims against the Debtor that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

U. *Feasibility -- 11 U.S.C. § 1129(a)(11)*. The financial projections set forth in Exhibit B to the Disclosure Statement and other evidence proffered or adduced by the Debtor at the Confirmation Hearing with respect to feasibility (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged in any objection, and (iii) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of Reorganized NEP. Based upon the foregoing, the Court finds that the Debtor has satisfied the requirements of section 1129(a)(11) of the Bankruptcy Code.

V. *Payment of Fees -- 11 U.S.C. § 1129(a)(12)*. All fees payable under 28 U.S.C. § 1930 on or before the Effective Date have been paid or will be paid on the Effective Date or consistent with Article II.D of the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W. *Retiree Benefits – 11 U.S.C. § 1129(a)(13)*. The Debtor is not obligated to provide any retiree benefits, as such term is defined in section 1114 of the Bankruptcy Code. As a result, no such benefits are required to be continued under the Plan, and the Plan accordingly satisfies section 1129(a)(13) of the Bankruptcy Code.

X. *Domestic Support Obligations – 11 U.S.C. § 1129(a)(14)*. The Debtor is not required by a judicial or administrative order, or by statute, to pay domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

Y. *Debtor is not an Individual – 11 U.S.C. § 1129(a)(15)*. The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

Z. *Transfers of Property – 11 U.S.C. § 1129(a)(16)*. The Debtor is not a moneyed, business or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

AA. *Fair and Equitable; No Unfair Discrimination as to Rejecting Class -- 11 U.S.C. § 1129(b)*. Class 6 is an Impaired Class of Equity Interests that is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan does not discriminate unfairly and is fair and equitable with respect to Class 6, as required by section 1129(b)(1) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Class 6. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of such rejecting Class.

BB. *Only One Plan -- 11 U.S.C. § 1129(c)*. Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

CC. *Principal Purpose -- 11 U.S.C. § 1129(d)*. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

DD. *Small Business Case – 11 U.S.C. § 1129(e)*. The Chapter 11 Case is not a small business case within the meaning of the Bankruptcy Code. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

EE. *No Objection to Disposition of Contracts*. No party to an executory contract to be assumed by the Debtor pursuant to the Plan has objected to the assumption thereof.

FF. *No Liquidation*. Because the Plan does not provide for the liquidation of all or substantially all of the property of the Estate and Reorganized NEP will engage in business following consummation of the Plan, section 1141(d)(3) of the Bankruptcy Code is not applicable.

GG. *Burden of Proof*. The Debtor, as proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

HH. *Satisfaction of Confirmation Requirements*. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II. *Good Faith*. Based on the record before the Court in the Chapter 11 Case, (i) the Debtor, (ii) Reorganized NEP, (iii) the Lender, (iv) the respective successors, predecessors, control persons, members, officers, directors, employees, and agents of each of the entities in (i) through (iii) above, and (v) the respective attorneys, financial advisors, investment bankers, accountants and other professionals retained by such persons, of the entities in (i) through (iii) above, in each case in their capacities as such, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the UST Guidelines, and any applicable non-bankruptcy law, rule, or regulation in connection with all of their respective activities relating to the Plan, including the execution, delivery and performance of the Restructuring Support Agreement and solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

JJ. *Reduction of Stay Period*. There is cause to shorten the 14-day stay of effectiveness under Bankruptcy Rule 3020(e) because holders of all Claims are benefited by having the Effective Date occur as soon as possible so that distributions may occur promptly.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Confirmation of Plan. The Plan (including the Plan Supplement) is approved and confirmed under section 1129 of the Bankruptcy Code. All objections and responses to, and statements and comments regarding, the Plan, to the extent not already withdrawn, waived, settled or resolved pursuant to representations on the record at the Confirmation Hearing, shall be, and hereby are, overruled on the merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

2. Incorporation of Terms and Provisions of Plan. The terms and provisions of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety.

3. Binding Effect. Effective on the Effective Date, and except as expressly provided in this Confirmation Order, the Plan and its provisions shall be binding upon the Debtor, Reorganized NEP, and any individual or entity acquiring or receiving property or a distribution under the Plan and any holder of a Claim against, or Equity Interest in, the Debtor, including all governmental entities, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan. To the extent provided by sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, Plan Supplement and all other Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

4. Application of Absolute Priority Rule. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the deemed rejecting Class 6 Equity Interests. Therefore, the cancellation of the Equity Interests in Class 6 is approved.

5. Continued Corporate Existence and Vesting of Assets. On and after the Effective Date, the Debtor will, as Reorganized NEP, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law. On the Effective Date, all property of the Estate,

and any property acquired by the Debtor or Reorganized NEP under the Plan, will vest in Reorganized NEP free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests and other interests, except for the Liens and Claims established under the Plan. To the extent any certificate of formation, bylaws or other analogous formation or governing documents are amended in connection with the Plan, such documents are deemed to be amended by the Plan and require no further action or approval other than any requisite filings required under applicable state, provincial or federal law. On and after the Effective Date, Reorganized NEP may operate its businesses and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments and other materials comprising the Plan Supplement.

6. Retained Causes of Action and Resolution of Disputed Claims. Unless a Cause of Action of the Debtor (including the right to object to any Claim asserted against the Estate) has been or is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, an agreement entered into by the Debtor during the Chapter 11 Case, or in a Final Order, all rights of the Estate from and after the Effective Date with respect to the Causes of Action are expressly and exclusively preserved for the benefit of, assigned to, and fully vested in, Reorganized NEP. On or after the Effective Date, except as provided for in the Plan or herein, Reorganized NEP shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim. From and after the Effective Date, Reorganized NEP

shall have the exclusive right to settle or compromise any Disputed Claim without further notice to or action, order or approval of the Bankruptcy Court.

7. Discharge of Claims. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan (including Article III.E of the Plan) or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release of Claims, Equity Interests and Causes of Action against the Debtor of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt, right or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder. Any default by the Debtor with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

8. Injunction. Except as otherwise provided in the Plan (including Article III.E of the Plan) or in any document, instrument, release or other agreement entered into in connection with the Plan or approved by order of the Court, from and after the Effective Date all Persons or Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are (i) permanently enjoined from taking any of the following actions against the Estate or any of its property on account of any such Claims or Equity Interests and (ii) permanently enjoined from taking any of the following actions against the Debtor, Reorganized NEP or their property on account of such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any Lien or encumbrance; and (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons or Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures and other agreements or documents assumed, delivered or Reinstated under or in connection with the Plan. By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to the injunctions set forth in Article IX.C of the Plan.

9. Approval of Releases by the Debtor. The releases set forth in Article IX.D.1 of the Plan are hereby approved. On the Effective Date, and notwithstanding any other provisions of the Plan, the Debtor and Reorganized NEP, on behalf of themselves and the Estate, shall be deemed to unconditionally release the Released Parties from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or

unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, assertable on behalf of or derivative from the Debtor, based in whole or in part upon actions taken solely in their respective capacities described herein or any omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or Reorganized NEP, the Disclosure Statement, the Plan Support Agreement, the documents included in the Plan Supplement, or the Plan or related agreements, instruments, or other documents, provided, however, that (a) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct as determined by a Final Order, (b) except as provided in the last sentence of Article IX.D.1 of the Plan, Reorganized NEP shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any Claims, and (c) the foregoing release applies to the Released Parties solely in their respective capacities described herein. For the avoidance of doubt, the foregoing release includes any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities against the Lender, including without limitation any legal or equitable defense or right of set-off or recoupment with respect to the Secured Lender Claim.

10. Approval of Releases by Holders of Claims (Third Party Release). The releases set forth in Article IX.D.2 of the Plan, are hereby approved. On the Effective Date, and notwithstanding any other provisions of the Plan (other than as provided in Article III.E of the Plan), (i) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to sue or otherwise seek recovery from any Released Party on account of any Claim, including any Claim or Cause of Action based upon tort, breach of contract,

violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date in any way related to the Debtor or its businesses and affairs and (ii) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to assert against any Released Party any Claim, obligation, right, Cause of Action or liability that any holder of a Claim may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or Reorganized NEP, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated under the Plan, the Chapter 11 Case, the documents included in the Plan Supplement, the Plan Support Agreement, the Plan, or the Disclosure Statement or related agreements, instruments or other documents, provided, however, the foregoing release will not (i) apply to obligations arising under the Plan, (ii) be construed to prohibit a party in interest from seeking to enforce the terms of the Plan, and (iii) apply to any act or omission that constitutes gross negligence or willful misconduct as determined by a Final Order. The foregoing releases apply to the Released Parties solely in their respective capacities described herein.

11. Approval of Exculpation and Injunction. The exculpation and injunction provisions provided in Article IX.D.3 of the Plan are approved. The Debtor and its officers, directors, and retained professionals (including, for the avoidance of doubt, its Professionals) shall have no liability whatsoever to any Person or Entity for any act or omission that occurred prior to, or following, the Petition Date in connection with the Chapter 11 Case, including the preparation, negotiation, and filing of the Plan, the Disclosure Statement, the negotiation of the

documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Case, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such parties from liability.

12. Except as otherwise expressly provided for in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order, including, but not limited to, the release and exculpation provisions set forth in Article IX of the Plan and paragraphs 9, 10 and 11 of this Confirmation Order, shall (i) release, waive, impair or otherwise prejudice, in any way, the factual or legal basis on which the Debtor or Reorganized NEP may object to any Claim, (ii) affect, in any way, any objection that has been filed or may be filed in the future to any Claim, or (iii) release, waive, impair or otherwise prejudice, in any way, any Cause of Action the Debtor or Reorganized NEP may assert against any creditor or alleged creditor whose Claim is not an Allowed Claim and has been or may be the subject of a claim objection. From and after the Effective Date, the Debtor or Reorganized NEP, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. Reorganized NEP is deemed the representative of the Estate for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

13. Cancellation of Existing Securities. Pursuant to Article IV.F of the Plan, on the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtor under any instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically Reinstated pursuant to the Plan), shall be cancelled, and Reorganized NEP shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtor that are specifically Reinstated pursuant to the Plan or assumed by the Debtor) shall be released and discharged. For the avoidance of doubt, nothing in this paragraph or Article IV.F of the Plan shall affect (a) the Secured Lender Claim, which shall not be cancelled as of the Effective Date of the Plan but shall continue in full force and effect as a legal and binding obligation of the Debtor and NEP Equipment in all respects, other than as specifically amended pursuant to Article III.C.3 of the Plan (and any documentation effectuating the amendment of the Secured Lender Claim); or (b) the discharge of or result in any obligation, liability or expense of the Debtor or Reorganized NEP or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan, or result in any additional obligation, expense or liability of the Debtor or Reorganized NEP.

14. Limited Liability Company Actions. On or prior to the Effective Date, the Debtor and, after the Effective Date, Reorganized NEP, may enter into or undertake any limited liability company transactions and may take such actions as may be determined by the Debtor or Reorganized NEP to be necessary or appropriate to effect such transactions as contemplated by and consistent with the Plan. The actions to effect the limited liability company transactions may include, without limitation: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, conversion, restructuring, recapitalization, disposition, liquidation or dissolution containing terms that are consistent with the terms herein and that satisfy the requirements of applicable law and such other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, disposition, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms herein and having such other terms to which the applicable entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, conversion or dissolution (or similar instrument) pursuant to applicable law; and (iv) all other actions which the applicable entities may determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with such transactions. The limited liability company transactions may include one or more mergers, consolidations, conversions, restructurings, recapitalizations, dispositions, liquidations or dissolutions, as may be determined by the Debtor to be necessary or appropriate to effect the purposes of such transactions for the benefit of Reorganized NEP, including, without limitation, the potential simplification of the organizational structure of the Debtor. Implementation of any such transactions shall not affect (a) any distributions, discharges, exculpations, releases or injunctions set forth in the Plan, or (b) any Claim, rights or contract held by any Person with any

non-debtor affiliate or subsidiary of the Debtor. The limited liability company transactions are authorized and approved by this Confirmation Order pursuant to, among other provisions, sections 1123 and 1141 of the Bankruptcy Code and title 6 and title 8 of the Delaware Code, if applicable, without any further notice, action, third-party consents, court order or process of any kind, except as otherwise set forth herein or in the Plan.

15. Specific Authorization as to New Equity. On the Effective Date, Reorganized NEP is authorized to issue the New Equity to holders of Class 3 Secured Lender Claims in accordance with the provisions of the Plan without the need for any further corporate action and without any further action by any holder of a Claim. Pending the occurrence of the Effective Date, the Debtor is authorized to take all actions as may be necessary to facilitate the issuance of the New Equity as of the Effective Date.

16. Specific Authorization as to Disbursements. On the Effective Date or as soon as practicable thereafter, all distributions under the Plan shall be made by Reorganized NEP or such other Entity designated by Reorganized NEP.

17. Governmental Approvals Not Required. To the extent provided in the Bankruptcy Code, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto that are consistent with the Plan, the distribution of any property pursuant to the Plan, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto that are consistent with the Plan.

18. Exemption from Certain Taxes. Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer or exchange under the Plan of the New Equity, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax

19. Exemption from Registration. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to the Plan and any and all settlement agreements incorporated therein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable State or local law requiring registration prior to the offering, issuance, distribution or sale of securities. In addition, except as otherwise provided in this Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Equity contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

20. Applicable Non-Bankruptcy Law. To the extent provided by sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

21. No Appointment of Managers. As of the Effective Date, the term of the current members of the Debtor's board of managers shall expire without further action by any Person and such members shall have no continuing obligations to the Debtor or Reorganized NEP on or after the Effective Date. Effective as of the Effective Date, Reorganized NEP shall be managed by its sole member.

22. Approval of Assumption of Contracts. Section 365 of the Bankruptcy Code has been satisfied and the Debtor has provided adequate assurance of future performance as required thereunder with respect to the executory contracts to be assumed under the Plan. Except to the extent a timely objection has already been filed, each non-Debtor party to an executory contract or unexpired lease to be assumed pursuant to the Plan is deemed to have consented to the assumption of such executory contract or unexpired lease and the cure amount previously disclosed by the Debtor, and such parties are barred from asserting any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtor, its Estate or Reorganized NEP prior to the Effective Date. If an objection to a proposed assumption, assumption and assignment or Cure Claim is not resolved in favor of the Debtor before the Effective Date, the applicable Executory Contract or Unexpired Lease may be designated by the Debtor or Reorganized NEP for rejection within five (5) Business Days of the entry of a Final Order of the Court resolving the matter against the Debtor. Such rejection shall be deemed effective as of the Effective Date. In the event Reorganized NEP determines to

assume the applicable executory contract related to the disputed cure, such disputes shall be cured either within 30 days of the entry of a Final Order determining the amount, if any, of the Debtor or Reorganized NEP's liability with respect thereto, or as may otherwise be agreed to by the parties.

23. Effect of Conflict Between Plan and Confirmation Order. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

24. Reversal. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent Order of the Bankruptcy Court or any other court, in the absence of a stay of this Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

25. Authorization to Consummate Plan. Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall take effect immediately upon its entry and the Debtor is authorized

to consummate the Plan immediately after entry of this Confirmation Order and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan.

26. Time for Filing Administrative Expense Claims. The holder of an Administrative Expense Claim accruing on or after September 15, 2016, other than: (a) a Fee Claim; (b) an Administrative Expense Claim that has been Allowed on or before the Effective Date; and (c) a claim for U.S. Trustee Fees, must file with the Bankruptcy Court and serve on Reorganized NEP and its counsel, a request for such Administrative Expense Claim so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after service of notice of occurrence of the Effective Date. Such request must include at a minimum: (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; (iii) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. Failure to file and serve such notice or request timely and properly shall result in the Administrative Expense Claim being forever barred and extinguished.

27. Fee Claims. All requests for allowance of Fee Claims on a final basis must be filed with the Court and served on Reorganized NEP and its counsel, and the U.S. Trustee, no later than forty five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Case, the allowed amounts of such Fee Claims shall be determined by the Court. Parties in interest will have 21 days to object to any Fee Claim. For the avoidance of doubt, this requirement shall not be applicable to any Secured Lender Expenses, which shall be paid pursuant to Article II.E of the Plan. Failure to file and serve final fee applications timely and properly shall result in the underlying Fee Claims being forever barred and extinguished.

Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than twenty-one (21) days after the date that a Fee Claim is filed with the Court. Upon final allowance by the Court of any Fee Claim, Reorganized NEP shall pay the amount of all Allowed but unpaid Professional Fees promptly and directly to the applicable Professional.

28. Payment of Statutory Fees. On the Effective Date, the Debtor shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, Reorganized NEP shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee until the entry of a final decree in the Chapter 11 Case. Reorganized NEP shall remain obligated to pay quarterly fees to the U.S. Trustee until the Chapter 11 Case is closed.

29. Notice of Entry of Confirmation Order and Effective Date. No later than five (5) Business Days following the Effective Date, Reorganized NEP shall serve notice of the entry of this Confirmation Order and the Effective Date pursuant to Fed. R. Bankr. P. 2002(f)(7), 2002(k) and 3020(c) on all holders of Claims and Equity Interests, the U.S. Trustee, and the parties receiving notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002, by causing notice substantially in the form attached hereto as Exhibit A to be delivered to such parties by first-class mail, postage prepaid. No further notice of the entry of this Confirmation Order shall be required.

30. Texas Comptroller of Public Accounts ("Comptroller"): Notwithstanding anything in the Plan or the Confirmation Order to the contrary: (1) with regard to the balance due the Comptroller for the 2016 pre-petition franchise tax period: (a) the Comptroller shall not be required to file a proof of claim, and (b) the liability shall be satisfied via application of funds

previously remitted on Debtor's taxpayer account; (2) with regard to taxes coming due the Comptroller post-petition: (a) the Comptroller shall not be required to file a proof of claim or request for administrative expense, and (b) all tax returns and payments shall be timely remitted under and in accordance with the laws of the State of Texas; (3) the Comptroller's setoff rights shall be preserved; and (4) the Comptroller's rights, if any, as to non-debtor responsible parties shall be preserved.

31. Non-Debtor Affiliates and Subsidiaries. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other document, instrument or order, and for the avoidance of doubt, it is expressly understood, agreed and intended by the Debtor and Reorganized NEP that (1) the Plan and any and all related documents and orders in the Chapter 11 Case shall apply solely to the Debtor and Reorganized NEP and not to any non-Debtor affiliate or subsidiary (with the sole exception of NEP Equipment, but solely as relates to the consensual change to the Claims described in the Plan Support Agreement), (2) the rights, claims and remedies of any Person (including but not limited to any lender to any non-debtor entity) relating to any contract, lease, license, permit, guaranty, litigation, loan, instrument or obligation of any non-Debtor affiliate or subsidiary of the Debtor shall remain at all times in full force and effect without any limitation, waiver, release, cancellation or alteration whatsoever as if this Chapter 11 Case had not been filed, and (3) each and every contract, lease, license, guaranty, permit and instrument of the Debtor shall be, and hereby is, assumed and Reinstated in full with no amendments, modifications, alterations, discharge, release or limitations to any such agreement or any provision therein (other than the agreed upon changes to the Claim of the Lender, as described herein), and without any further notice, order, instrument or action by or on behalf of the Debtor, other than such notice as may be required pursuant to this Confirmation

Order, and subject to any legal or equitable defenses or rights of setoff held by the Debtor or any other party existing as of the Petition Date.

32. Miscellaneous Provisions.

(a) Except as otherwise provided in the Plan and this Confirmation Order, all service of pleadings in the Chapter 11 Case filed after the Effective Date shall be limited to counsel to the Debtor, the Secured Lender, the U.S. Trustee, and any party known to be directly affected by the relief sought.

(b) Without intending to modify any prior order of this Court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other hand, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document). In the event of any inconsistency between the Plan or any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Confirmation Order, on the other hand, the provisions of this Confirmation Order shall govern.

(c) In the event that the Effective Date does not occur on or before December 31, 2016, upon notification submitted by the Debtor to the Court: (i) the Confirmation Order shall be vacated; (ii) no distributions under the Plan shall be made; (iii) the Debtor and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtor or any other

person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor unless extended by Court order.

(d) Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Confirmation Order (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

33. Order Effective Immediately. Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Confirmation Order shall be effective and enforceable immediately upon entry. The Debtor is authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Confirmation Order and upon, or concurrently with, satisfaction of the conditions set forth in the Plan.

Dated: December 9, 2016
Wilmington, Delaware

Kevin Gross
United States Bankruptcy Judge